June 20, 2023

Dear Court Clerk Please find enclosed court order to sign and return
this "Removed 1983 Civil Rights Complaint from Solano Superior  Court"
and return it to this Court so the Court can proceed.
        I have complied with the order and attached a POS as well. It should be
noted that I am NOT the removing party. Deputy Ag Patricia Kealy is. Thank
you for your time and consideration in this matter.

Respectfully

*Troy Alexander Temple*

Troy Alexander Temple
Plaintiff In Pro Per

*Can you also send me a copy of the*
*courts local rules — Thanks*

**FILED**

JUN 3 0 2023

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
                    DEPUTY CLERK

Troy Alexander Temple, D-06645
1600 California Drive G-1
Vacaville, California  95696

Troy Alexander Temple D-06645
CALIFORNIA MEDICAL FACILITY   (CMF)
P.O. BOX 2000
VACAVILLE, CA 95696-2000

-------------------------------------------------------

1

2

3

4

5

6

7                          UNITED STATES DISTRICT COURT

8                     FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10    TROY ALEXANDER TEMPLE,                    No. 2:23-cv-00478-EFB (PC)

11                   Plaintiff,

12           v.                                 ORDER

13    MICHAEL GIBSON, et al.,

14                   Defendants.

15

16           Plaintiff is a state prisoner proceeding without counsel in an action brought under 42

17    U.S.C. § 1983. He commenced this civil action in the Solano County Superior Court and

18    defendants DiTomas, Osman, Austin, Green, Lal, Santos, Allison, Hurtado, Connor, Scott,

19    Martin, and Davidson ("defendants") removed it to federal court on March 13, 2023.[1]

20    Defendants request that the court screen the complaint pursuant to 28 U.S.C. § 1915A and

21    dismiss any claims that are frivolous, malicious, or which fail to state a cognizable claim. ECF

22    No. 1 at 4. As discussed below, removal of this action was proper but the court cannot conduct

23    the required screening of plaintiff's complaint because plaintiff has not signed it.

24    /////

25    /////

26    _____

27    [1] Defendants Allison, Austin, and DiTomas were served on February 9, 2023. ECF No. 1
      at 2. Defendants Connor, Green, Hurtado, Lal, Osman, Santos, and Scott were served on
      February 17, 2023. *Id.* Defendants Davidson and Martin were served on February 21, 2023. *Id.*
28    The complaint names additional defendants, but they have not been served. *Id.* at 3.

                                                1

1

2                                               Jurisdiction

Except where Congress otherwise dictates, a defendant may remove to federal court "any

3 civil action brought in a State court of which the district courts of the United States have original

4 jurisdiction . . ." 28 U.S.C. § 1441(a). Federal courts have original jurisdiction "of all civil

5 actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

6 "If a case is improperly removed, the federal court must remand the action because it has no

7 subject-matter jurisdiction to decide the case." *ARCO Envtl. Remediation, L.L.C. v. Department*

8 *of Health & Envtl. Quality*, 213 F.3d 1108, 1113 (9th Cir. 2000). Federal courts have an

9 independent obligation to examine their own jurisdiction. *FW/PBS, Inc. v. City of Dallas*, 493

10 U.S. 215 (1990).

11         Among various state law claims, plaintiff sues numerous defendants pursuant to 42 U.S.C.

12 § 1983 for violating his rights under the Eighth and Fourteenth Amendments to the United States

13 Constitution. Plainly, plaintiff has raised a federal claim over which this court has jurisdiction.

14 *See Ultramar America, Ltd. v. Dwelle*, 900 F.2d 1412, 1413-1414 (9th Cir. 1990) (federal

15 question jurisdiction exists if at least one claim in the complaint arises under federal law). This

16 court may exercise supplemental jurisdiction over any state-law claims provided that they "are so

17 related to claims in the action within such original jurisdiction that they form part of the same

18 case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

19 Having concluded that federal question jurisdiction exists, the court turns to the screening of the

20 complaint.

21                                     Screening Requirement

22         The court is required to screen complaints brought by prisoners seeking relief against a

23 governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The

24 court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

25 "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

26 monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

27 /////

28 /////

2

1    Here, however, the court cannot conduct the required screening of plaintiff's complaint

2  because, as noted, plaintiff has not signed it.[2] *See* ECF No. 1 at 33. Rule 11 of the Federal Rules

3  of Civil Procedure requires that "[e]very pleading, written motion, and other paper . . . be signed

4  by at least one attorney of record in the attorney's name—or by a party personally if the party is

5  unrepresented." Fed. R. Civ. P. 11(a). Because plaintiff did not sign the complaint, it must be

6  disregarded. Within thirty days, plaintiff may file a complaint that is signed.

7                                        Conclusion

8    Accordingly, it is ORDERED that plaintiff shall filed a signed complaint within 30 days

9  of service of this order. Failure to so comply may result in the dismissal of this action.

10

11  Dated: June 1, 2023.

12                                    EDMUND F. BRENNAN
                                      UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27
    _____
28      [2] Plaintiff also failed to sign the declaration he filed with the complaint. *See* ECF No. 1 at
    40.

                                          3

MIME-Version:1.0 From:caed_cmecf_helpdesk@caed.uscourts.gov To:CourtMail@localhost.localdomain
Message-Id: Subject:Activity in Case 2:23-cv-00478-EFB (PC) Temple v. Gibson et al Order.
Content-Type: text/html

*This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.*
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* There is no charge for viewing opinions.**

### *U.S. District Court*

### *Eastern District of California – Live System*

**Notice of Electronic Filing**

The following transaction was entered on 6/1/2023 at 11:08 AM PDT and filed on 6/1/2023

| | |
|---|---|
| *Case Name:* | (PC) Temple v. Gibson et al |
| *Case Number:* | 2:23-cv-00478-EFB |
| *Filer:* | |
| *Document Number:* | 4 |

*Docket Text:*
**ORDER signed by Magistrate Judge Edmund F. Brennan on 06/01/2023 DIRECTING Plaintiff to file a signed complaint within 30 days of service of this order. (Spichka, K.)**

**2:23-cv-00478-EFB Notice has been electronically mailed to:**

Patricia Kealy &nbsp &nbsp patricia.kealy@doj.ca.gov, angie.brodbeck@doj.ca.gov, DocketingSACCLS@doj.ca.gov, ECFCoordinator@doj.ca.gov, Joanna.Hood@doj.ca.gov, Terry.Farster@doj.ca.gov

**2:23-cv-00478-EFB Electronically filed documents must be served conventionally by the filer to:**

Troy Alexander Temple
D-06645
CALIFORNIA MEDICAL FACILITY (CMF)
P.O. BOX 2000
VACAVILLE, CA 95696-2000

The following document(s) are associated with this transaction:

FILED/ENDORSED
Clerk of the Superior Court

DEC 05 2022

By _____
DEPUTY CLERK

$435 FWOF

1    **Troy Alexander Temple**
2    **CDCR # D06645**
3    **California Medical Facility**
4    **P.O. Box 2000 / G1**
5    **Vacaville, California 95696**

6

ASSIGNED TO
JUDGE CHRISTINE CARRINGER
FOR ALL PURPOSES

7    In Propria Persona

8

9       **Superior Court Of California**

10      **County Of Solano**

11        Case No. **FCS059344**

12    Troy Alexander Temple,

13        Plaintiff,

14    Vs.

15    Dr. Michael Gibson, U.C. Davis Cardiologist,
16    In His Individual and Official Capacity:
17    Dr. Imo Ebong, U.C. Davis Cardiologist,
18    In Her Individual and Official Capacity:
19    Dr. Martin Cadeiras, U.C. Davis Cardilogist,
20    In His Individual and Official Capacity:
21    Farid Dawar, LVAD Coordinator RN,
22    In His Individual and official Capacity;
23    Kathleen Allison, Secretary of Corrections,
24    In Her Individual and Offical Capacity
25    Jeniffer Benavidez, Warden, CMF,
26    In Her Individual And Official Capacity;
27    Lt. Carlos Santos, Public Information Officer.
28    In His Individual And Official Capacity
29    David Hurtado, AW,
30    In His Individual And Official Capacity;
31    Dr. Mohamednoor Osman, Chief Med Executive,
32    In His Individual and Official Capacity;
33    Dr. Joshua Conner, Chief Med Officer (CMO).

COMPLAINT  Pursuant to 42 U.S.C. 1983 for Cruel And Unusual Punishment Under Federal Law (No Shower In 2 Years); Deliberate Indifference To a Serious Medical Health Risk Resulting in Serious and Permanent Injury (Infection); American Disability Act (ADA) Violations for Discrimination Under Federal & State Law; State Claims For Criminal & Gross Negligence; Infliction Of Emotional & Mental Stress; and Assault & Battery

Preliminary and Injunctive Relief Sought; Compensary Damages in the amount of One Dollar ($1.00); Punitive Damages to Decided by Jury Trial, Jury Trial Demanded.

1

1    In His Individual and Official Capacity;

2    Dr. Johnson Clark, Physician & Surgeon (PCP),

3    In His Individual and Official Capacity;

4    Dr. Michelle Ditomas,

5    In Her Individual and Official Capacity;

6    Anchal LAL, Public Health Nurse,

7    In Her Individual and Official Capacity;

8    Lanie Scott SSN-II,

9    In Her Individual and Official Capacity;

10   Dr. Lori Austin, CEO, California Department of Heath,

11   in her Indiividual and Official Capacity ;

12   Lori Green,

13   In Her Individual and Official Capacity;

14   John and Jane Doe RN's and LVN's,

15   Dr. Thomas J. Aragon,

16   California Department of Health

17   Licensing Agency For CMF (San Bernadino)

18   In Their Individual and Official Capacity

19   Sam Martin, PIA-HFM Superintendant, CMF,

20   In His Individual and Offical Capacity ;

21   Bill Davidson, General Manager CAPIA,

22   In His Individual And Official Capacity.

23          Defendants.

24                                    I.

25              EXHAUSTION OF ADMINISTRATIVE REMEDIES

26          Plaintiff has exhausted all Adminstrative remedies under the Prison Litigation Act Of 1996 (42

27   U.S.C. 1997 e (a) and Booth vs. Churner, 121 S.Ct. 1819 (2001). Plaintiffs Administrative Appeal was

28   denied by prison officals on June 1, 2022 and is attached hereto as EXHIBIT-A within the meaning of

29   of Federal Rules Of Civil Procedure 10 (c), and Brown Vs. Toombs, 139 F 3d 1102 at 1104 (6th Cir. 1998).

30                                    II.

31              Previous Law Suits Filed In U.S. District Court

32          Plaintiff has filed two (2) Previous Civil Rights Complaints Pursuant to 42 U.S.C. 1983, within

33   the meaning of Title 28 U.S.C. 1915 (g). The first complaint was filed in the United States District Court

34   for the Southern District Of Nevada before Chief District Court Judge Harry E. Clayborne [Impeached

35   before Congress]. Plaintiff sued a Medical Health Corporation  known as "Prison Healthcare Service

36   Inc." [Connecticut Based Corp.] for Deliberate Indifference  to a Serious Medical Condition [untreated

1  ear infection] and the inflection of Cruel & Unusal Punishment.  This Corp. Was forced to correct and
2  address plaintiff's condition once the suit was filed .

3      The case was dismissed and both parties were ordered to pay their own attorney fee's.  The
4  Defendants insurance policy did not cover punitive damages so she had to hire a private attorney at a
5  cost of $50,000,00.  Plaintiff was Inpropria Persona and had no such cost.

6  The second law suit plaintiff filed was against Sutter County District Attorney Carl V. Adams, and
7  Frederic Schroeder, Assistant District Attorney, for their "Extra Judicial" acts in a criminal case. While
8  most prosecutors and judges  enjoy total immunity, this case went on for approximately 8 years on
9  the merits.  Plaintiff was ultimately represented by Siobhan Briley of Gregory P. Joseph Law Offices
10  485 Lexington Ave. NY.  www.josephnyc.com who is the #3 Rated Law Firm in the United States, and
11  #10 in the world.  The case No. In this suit is:  Eastern District of California (Fresno) # CIV-F-04—6716
12  REC-DLB.

13      Also Review Ninth Circuit Court # 008-16831.  These two Prosecuting  Attorney's had to pay
14  for their own legal fees to a mega law firm in Sacramento because the State Of California, and the
15  County of Sutter could NOT indemify them for their legal fees which were substantial over the 8 year
16  period.

17                                        III.

18                              JURISDICTION AND VENUE

19      This civil action is authorized by 42 U.S.C . Section 1983 to redress the deprivation, under color
20  of State Law, of rights secured by the Constitution of the United States.  The Court has Jurisdiction
21  under 28 U.S.C. Section 1331 and 1343 (a) (3).  Plaintifff seeks declartory relief pursuant to 28 U.S.C.
22  2201 and 2284 and Rule 65 of The Federal Rules of Civil Procedure.  This Court has pendant
23  Jurisdiction over plaintiff's State & Federal Claims. All Defendants reside in this Jurisdiction.

24                                        IV.

25                              PARTIES TO THIS ACTION

26                                   (Plaintiff)

27      Plaintiff, Troy Alexander Temple, is and was at all times mentioned herein a patient at The
28  California Medical Facility in Vacaville, California and U.C. Davis Medical Center/Cardiothoractic
29  Progressive  Care Unit (6th  Floor).    Plaintiff is an LVAD Patient (Left Ventrical Assist
30  Device)(Computerised Heart Pump) he has had one (1) Open Heart 9 ½ hour surgery, and 3 additional
31  Heart surgeries within one year.  He is Currently awaiting a "Heart Transplant" at U.C. Davis Medical
32  Center.

33                                   (Defendants)

3

1       Defendant, Dr. Michael Gibson, U.C. Davis Medical Center, is Temple's Cardiologist, and
2 member of Plaintiff's LVAD Team. Being plaintiff is incarcerated, Dr. Gibson owes a special Duty of
3 Care to Plaintiff, when he is clearly aware of present danger to plaintiff [Severe Unsanitary Conditions
4 at CMF], that could seriously harm, or kill plaintiff;

5       Defendant, Dr. Imo Ebong, U.C. Davis Medical Center, is Temple's Cardiologist, and member
6 of Plaintiff's LVAD Team. Being plaintiff is incarcerated, Dr. Ebong owes a special Duty of Care to
7 Plaintiff, when she is clearly aware of present danger to plaintiff [Severe Unsanitary Conditions at
8 CMF] that could cause serious harm [Infection] or kill plaintiff;

9       Defendant, Dr. Martin Cadeiras, U.C. Davis Medical Center, is Temple's Cardiologist, and
10 member of Plaintiff's LVAD Team. Being plaintiff is incarcerated, Dr. Cadeiras owes a special Duty of
11 Care to Plaintiff, when he is clearly aware of present danger to plaintiff [Severe Unsanitary
12 Conditions] that could cause serious harm [ Infection] or kill plaintiff;

13       Defendant, Farid Dewar RN, U.C. Davis Medical Center, is Temple's LVAD Coordinator, and
14 member of Plaintiff's LVAD Team. Being plaintiff is incarcerated, RN Dawar owes a special Duty of
15 Care to Plaintiff, when he is clearly aware of present danger to plaintiff [Severe Unsanitay Conditions]
16 that could serious harm [Infection] or kill plaintiff;

17       Defendant, Kathleen Allison, is the Secretary Of Corrections, and once notified of potential
18 serious injury {Infection] and life threating conditions [Severe Unsanityary Conditions] owes plaintiff
19 a special duty of care to insure that he is not seriously injured [Infected] or killed; Allison does not
20 have immunity of any kind, as the Secretary Of Corrections, Under Penal Code 6100 thru 6106 Allison
21 is Declared by the California Governor to be directly responsible for patient care custody and
22 treament of patients at the California Medical Facility; [Exclusive]

23       Defendant, Jenniffer Benavidaz, is Warden at The California Medcial Facility, and once notified
24 of serious injury [Infection] and life threating Severe Unsanitary Conditions, owes plaintiff a special
25 duty of care to insure that he is not seriously injured[Infected] or killed;

26       Defendant, Lt. Santos, is Plublic Information Officer for the Warden at The California Medcial
27 Facility, and once notified of serious injury [Infection] and life threating Severe Unsanitary
28 Conditions, owes plaintiff a special duty of care to insure that he is not seriously injured [Infected], or
29 killed;

30       Defendant, David Hurtado, is Associate Warden at The California Medcial Facility, and once
31 notified of serious injury [Infection], and life threating Unsanitary Conditions, owes plaintiff a special
32 duty of care, to insure that he is not seriously injured [Infected], or killed;

33       Defendant, Dr. M. Osman, is Chief Medical Executive at The California Medcial Facility, and
34 once notified of serious injury [Infection], and life threating Severe Unsanitary Conditions, owes
35 plaintiff a special duty of care to insure that he is not seriously injured, or killed; Dr. Osman took
36 photos with his phone of raw sewage leaking directly into the G1 Shower.

4

1      Defendant, Dr. Conner is Chief Medical Executive at The California Medcial Facility, and once
2   notified of serious injury [Infection], and life threating Severe Unsanitary Conditions, owes plaintiff a
3   special duty of care to insure that he is not seriously injured, or killed;

4      Defendant, J. Clark, is a Physician & Surgeon at The California Medcial Facility, and once
5   notified of serious injury [Infection], and life threating Severe Unsanitary Conditions, owes plaintiff a
6   special duty of care to insure that he is not seriously injured [Infected], or killed;

7      Defendant, Dr. Michelle Ditomas, is the former Chief Medical Executive, she is responsible for
8   consciously, knowingly, bringing plaintiff to the California Medical Facility (By self admission) in to life
9   threating and unsanitary conditions that seriouly injured plaintiff;

10     Defendant, Ms. LAL, is Public Health Nurse at The California Medcial Facility, and once notified
11  of serious injury[Infection], and life threating Severe Unsanitary Conditions, owes plaintiff a special
12  duty of care to insure that he is not seriously injured, or killed;

13     Defendant, Ms. L. Scott, is the Lead Nurse Supervisor in CTC-G1-Hospital, she owes a special
14  duty of care to plaintiff in life threating and clearly unsanitary conditions that seriouly injured
15  plaintiff; Ms. Scott is the Nurse Supervisor and instructs LVN's and RN's that is ok to shower patients
16  in clearly UNSANITARY CONDITIONS [Two Sewage Pipes are still leaking directly into the G1 Shower
17  Room, even after maintenance TRIED to Paint their way out of it [COVER-UP]; Scott stopped plaintiff
    from cleaning the CTC G1 Unit floors when no one else would clean.
18

19     Defendant Dr. Lori Austin, is a former Chief Medical Executive at The California Medcial
20  Facility, and once notified of serious injury [Infections of Patients], and life threating conditions due
21  to Severe Unsanitary Conditions, owes plaintiff a special duty of care to insure that he is not seriously
22  injured, or killed;. It should be noted that Ms. Austin is currently CEO at the California Department of
23  Healthin Santa Rosa which oversee's the California Medical Facility in Vacaville, California. This
24  Creates a Special Conflict of Interest due to the fact she has known about the unsanitary conditions in
25  this institution for many years *and has only worked to cover these deadly conditions up within the
26  scope of both of her places of employment;*

27     Defendant, Lori Green, is Medical Maintenance Executive responsible for the Maintenance of
28  California Medical Facility . Ms. Green is familiar with the "maintenance history" of the deadly unsafe
29  and unsanitary conditions that have resulted in serious injury to plaintiff, and is responsible for both
30  deliberately ignoring these conditions, but COVERING the up as well;

31     Defendant, Bill Davidson, is the General Manager of CAL-PIA-HFM, and has ignored, and been
32  deliberately indifferent to plaintiff's serious risk of infection, and deadly conditions that prevail at
33  CMF. Daivdson would not answer plaintiff's families calls even though he was left messages on his
34  phone, and deliberately indifferent to plaintiff's letter's outlining serious unsanitary conditions
35  plaintiff is faced with, Davidson did not respond or act to plaintiff's letters;

1    Defenant, Sam Martin, is the PIA-HFM Superintendant at CMF and has ignored,  and been
2    deliberately indifferent to plaintiff's serious risk of infection, and deadly cunsanitary Conditions that
3    prevail at CMFG1-Hospital.  Martin  has been deliberately indifferent to plaintiff's verbal request
4    outlining serious conditions plaintiff is faced with in the CTC-G1-Hospital upon personal tour, he did
5    not respond to,  or act on  plaintiff's  written appeals (2) and an ADA Claim (1) that was handed
6    directly to him by an RN Supervisor Ms. L. Scott.  Sam Martin ridiculed  plaintiff's sister as being a
7    coward, *and has done everything NOT to fix the problems, only cover them up, with fake testing*
8    *(Meter) and other acts, including lying.*

9    Defendant, John & Jane Doe RN's and LVN's who have been warned of placing inmate patients
10   into the shower where these conditions continue to fester and infect.  Do to their training and ability
11   to witness the below severe unsanitary conditions [Photos Taken] if an inmate patient were to get
12   infected, this could constitute criminal negligence under state law, and deliberate Indifference to a
13   serious health risk under federal law.

14                                          V.

15                              FACTS & EVIDENCE

16    1) Plaintiff, Troy Alexander Temple, is Certified by the California Department of Corrections
17   Healthcare Services Division as a trained "PEER EDUCATOR" in Contagious & Infectous Disease
18   (Transmission, Prevention, and Control) and has been so for 23 years, teaching both Custody Staff,
19   and Inmates (See: Exhibit-A);

20    2) Plaintiff is also an American Disabilities Act (ADA) Law Clerk at California Medical Facility in
21   the present. (See: Exhibit-B);

22    3) Plaintiff is an Left Ventrical Assist Device LVAD Patient/Recipent  which is a computerized
23   heart pump, running at 5200 RPM's and pumping 4.9 Litters of blood through his body  each minute.
24   This procedure cost 2-Millon Dollars with custody cost. (See: Exhibit-C);

25    4) Plaintiff was infected with  Covid-19 in March of 2020 at High Desert State Prison.  Plaintiff
26   was transported to Renown Cardiac Hospital in Reno in 'Cardiac Shock' with an EF Rating of 5  [Yours
27   is normal at 50 to 70].  He spent 14 days in ICU and then he was transported to a Skilled Nursing
28   facility at Asberry Park in Scaramento, Ca; Covid-19 destroyed plaintiff's heart;

29    5) On June 10, 2020 Plaintiff was Transported to U.C. Davis Medical Center to be interviewed
30   by their LVAD Team [Three Cardiologist, Two RN's] for possible LVAD Impantation. After an hour long
31   interview with Dr. Michael Gibson.  Plaintiff was fortunately admitted to U.C. Davis that afternoon.
32   NOTE: Plaintiff is *very-thankfull* for this opportunity and *highly-appreciative*  to U.C. Davis, and LVAD
33   Program, they are saving lives, they certainly saved mine. (no question);

34    6) Dr. Gibson explained the LVAD Operation to include post-opperative factors and outcomes
35   that plaintiff would be able to engage in, and live normally:  Taking showers with the "speciallized
36   shower equiptment" provided [See: Exhibit-D]  work, travel, intimacy, light sports, etc. The non-

1  approved post-opperative things plaintiff could not do is swim, or take a bath, for fear of being
2  electricuted [SHOWERS ONLY] and running due to the actual weight of the pump and the downward
3  pull. (See: Exhibit-E);

4      7) On June 22, 2020, plaintiff proceeded into a 9 - 1/2 hour open heart surgery. As part of
5  this surgery there would be a computerized 'Drivline' (cable) inserted in to his abdomen that would
6  travel to his Heart, moving back and forth in the process (See: Exhibit-C). This surgical procedure
7  leaves an *open hole* in the abdomen that has to have a sterile dressing on it to keep infection out. The
8  sterile dressing change happens every day initially. Plaintiff was infection free going into surgery) and
9  when he arrived at CMF;

10     8) Plaintiff was in ICU with complications till July 14, 2020 at which time he was transported
11  to the California Medical Facility (CMF) in Vacaville, Ca. Before leaving U.C. Davis plaintiff asked all
12  three of his Cardiologist (Gibson, Ebong, and Cadeiras) 'when' he would be approved to use his
13  'Specialized Shower Gear' to shower?  They said to let the open heart sergical wounds, chest, and
14  abdomen, heal first, and they would approve of shower's upon visits to the Cypress Clinic after
15  evaluation.

16     9) After several evaluations at the Cypress Clinic with the LVAD Team, they gave plaintiff
17  permission to shower;

18     10) Plaintiff asked the other LVAD Patient in CTC-G1-Hospital (Barboza) what he normally
19  does for the shower.  Barboza informed Plaintiff that he has never and would never shower in the
20  CTC-G1-Hospital Shower due to the *'HIGHLY UNSANITARY CONDITION'* of the Shower room. He stated
21  he did not want to catch 'another Infection'; He has had two very-serious infections while in G1;

22     11) Plaintiff inspected the CTC-G1-Hospital shower room and witnessed the following:

23     • The shower floor, from the doorway to the back of the shower, had missing caulking
24       between the floor tiles, the tiles were also very pourus. The Tile is *67 years old;*
25     • It appeared, based on plaintiff's experience (More than A decade) of being a building-
26       porter, and shower-cleaner, at various institutions, that the floor was not only coated
27       in soap scum, but fecal matter, urine, blood, puss, semen and more [Everything
28       Hospital Patients would wash off their bodies], but the same substances have SEEPED
29       UNDER the TILES where the caulking was missing;
30     • The walls of the shower room were also covered in soap scum containg all the above
31       Substances;
32     • There is "RAW SEWAGE" from a 5 inch Sewer Pipe on the ceiling of the shower room
33       that is running down both sides of the walls , and underneath the ceiling panels. The
34       pipe is rusted out where it goes into the wall. They wipped off the outside wall 6-10-
35       22 but the raw sewage is still on the inside of the wall  and ceiling panel. There is a
36       "Grey Water" 3 inch Sewage pipe on the left hand side of the ceiling that is leaking
37       inside of the wall panel and egressing out of a "RIVIT HOLE" in plain sight.

7

- The "metal panels" spoken of were put up in the shower several years ago [according to long term maintenance staff] to "COVER-UP" the mold and mildew growing on the bare walls <u>behind</u> the panels;

- The window sill in side of the actual shower is "<u>rusted out</u>" and could cause Tetnus which is a cogtagious and infectous disease ("Clostridium tetani") which is very dangerous;

- There is <u>Black-Mold</u> everywhere throughout CMF. Medical and custody Staff told me that it is NOT Black Mold, I asked them [based on myown training] if they were actually certified and trained professionals when it came to Black Mold and they said NO. Plaintiff is not an expert in this field, however, it is <u>BLACK</u> and it <u>does NOT BELONG THERE;</u>

- Plaintiff has asked Doctors, Public Health Nurses, and custody staff then and recently if they would shower in the CTC G1 Shower and all of them said NO except one Nurse.

- Plaintiff asked several times for medical staff to call in an expert to evaluate the shower room completely they said no.

- The ceiling panels above the shower have both black mold and some other seashell like fungus growing there, LOOK Up AT THE CEILING;

- Plaintiff as well as Doctors named below have stated that G1 is the <u>*most unsanitary shower and unit*</u> they have ever seen, this is suposed to be a Hospital? Plaintiff made a conscious decision to not shower in the G1 Shower roomespecially sense Custody and Medical Staff would not have it evaluated and fixed. Plaintiff believes, and is informed by medical personell , that the shower room cannot be fixed.

# SPECIAL NOTE

12) All U.C. Davis Doctor's and CDCR Doctor's below are consciously aware that Plaintiff has a severe unexplained  (Undiagnosed) blood condition which is a serious form of ANEMIA called "Lymphtopenia" (abnormal low number of Lymphocytes in the blood).  Plaintiff's Red Blood Count, Hemoglobin, and hematocrit are also very low (Exhibit –F), and have gone a lot lower, plaintiff has had two blood transfusions, 3 units of blood the first time, 2 units the next). "Drastically reduced numbers of lymphocytes <u>LEAD TO INFECTIONS</u> with <u>bacteria</u>  (such as plaintiff's present and permanent infection '<u>Corynebactrium Striatum</u>')(Bacterium & Sepsis)(Dorland's Med. Dict.: "<u>C.</u> Striatum: a species found in various kinds of infections in immuno compromised persons".  Viruses (Covid 19 led to plaintiff's heart failure in 2020), fugi, and parasites". "People who have too few natural killer lymphocytes have problems controlling certain infections, especially VIRAL, FUNGAL, and parasitic infections. (Exhibits–G, L, & V) ".  "Severe lymphocyte deficencies can result in <u>uncontrolled infections,</u> that can be <u>FATAL</u>" (Exhibit G);

13)  Plaintiff is particularly-vulnerable to contracting these infections, and requires more-than the "extreme unsanitary conditions found at CMF, and in this complaint"  (COM # 11).  The

8

1   UNSANITARY condition of the G1 Shower, and Unit, can easily END plaintiff's life. ALL defendants
2   above and below owe a 'special duty of care' under State & Federal Law to protect plaintiff from
3   infection, and **DEATH**. Defendants have done little or nothing to protect plainitff against these
4   unconstitutional conditions. (please see: Exhibits A , J, and K.). Also see:  Declarations Of Troy Temple
5   attached.

## Illustrated Point

7       14) While Typing out this action BOTH  Barboza, and plaintiff,  caught Covid (a Virus) with two
8   others who were immuno compromised, out of 27 people on Unit G1.  This dispells a hemotologist
9   belief that plaintiff does not have a high risk of infection, due to compromised blood levels, all 4 patients
10  were immuno compromised. Plaintiff goes to great lenghts to remain infection free and wishes he could
11  say the same about defendants. Which begs the question , what are defendants doing within their
12  power  to protect plaintiff from sever infection and death...Defendant's act with total wanton disregard
13  (Above and below) for plaintiff's safety, injury, and death;

## U.C. Davis Defendants

15      15)  Plaintiff has informed defendant's **Gibson, Ebong, Cadeiras, and Dawar** of the abhorrant
16  conditions setforth above, (COM # 11).  They are "consciously aware" that The California Medical Facility
17  (Vacaville) is poorly  maintained, run  down, **UNSANITARY, and Deadly**.   These defendant's are
18  consciously aware that CMF is **so UNSANITARY and DEADLY** that CMF is responsible for: a) **The DEATH**
19  **of one LVAD Patient (Laurenzano)(Infection)(2013)(Exhibit-H);**  b) **Two severe-infections** of the second
20  LVAD Patient (Barboza) that almost killed him, Barboza  has also informed these defendant's that **CMF is**
21  **UNSANITARY;**  and,  c) Responsible for the near Death of Plaintiff on or before **December 17, 2020** of
22  a sever infection **(CORYNEBACTRIUM STRIATUM)**  that plaintiff was bleeding through both nostrils, his
23  left ear, his penis, and leaking green & yellow pus from the driveline site.  Plaintiff's heart is
24  permanately infected, so is the LVAD Pump, and the driveline, which was directly precipitated by the
25  **infectous-conditions experienced and found at CTC G1 CMF.**  Plaintiffs infection is **NOT Normal,** causes
26  up to **6 deaths per 21 individuals,** and is transmitted from PERSON TO PERSON. (Exhibit G & V).

27      16) The above U.C. Davis Defendants are deliberately indifferent to plaintiff's high risk of deadly
28  infection, and death in the respect that the **U.C. Davis LVAD Team** consciously chooses to **IGNOR** these
29  conditions, taking the position that they **ARE NOT** going to be **"POLITCALLY-INCORRECT"** by contacting,
30  and demanding,  to personally witness the UNSANITARY Conditions (alleged by both LVAD Patients) at
31  the California Medical Facility, or to ask that they be **corrected**...however,  they can send LVAD Patients
32  to **CMF** consciously knowing they face an increased risk of **infection** and **death** in a "UNSANITARY
33  **Envoirnment**" (afortiori), *They are plaintiff's Doctors, his LVAD Team members.  Because plaintiff is*

9

1    incarcerated, and CMF is curently an essential part of the LVAD Program, they owe a special duty of

2    care to plaintiff to address, and act on , the UNSANITARY Living conditions they have sent plaintiff

3    into,(Under State & Federal Law) (Please see: Points & Autorities). Please also see; Exhibit I, J, K, N ,

4    and O) .(See: Declarations of Troy Temple attached.

5                                    **CDCR Defendants**

6                    **Kathleen Allison - Secretary of Corrections**

7            17) Kathleen Allison, Secretary Of Corrections, has personally toured and throughly inspected

8    the unsanitary conditions at the California Medical Facility on numerous occasions, witnessing 'first-

9    hand' the poorly maintained, run down, unsanitary conditions spoken of in this complaint. (COM

10   #11). Kathleen Allison consciously knows that CMF is number 4 on Governor Gavin Newsom's "Closure

11   List" due to its poorly maintained, run down and unsanitary condition. Allison consciously ignores, and

12   is deliberately indifferent to these horrid conditions, and plaintiff's risk of infection, and death, She

13   deliberately does NOTHING about it. Allison is also discriminating against plaintiff's Medical Disability

14   (American Disability Act) because Plaintiff has heart failure, and open surgical wound (see Exhibt L &

15   V) (ADA) Title II of the American Disabilities Act of 1990 42 U.S.C. 12101 et seq and 42 U.S.C. 12131 et

16   seq, Plaintiff has 'specialized equiptment' to shower with... yet cannot shower due the unsanitary

17   condition of the G1 shower. This violates plaintiff's, 8th, and 14th Amendment right to equality

18   (Accessability), to be free from cruel and unusual punishment, and due process. Defendant Allison also

19   consciously knows that CMF Medical Maintenance under Lori Green is inapproprately and illegally

20   'covering up' these unconstitutional violations/conditions with FAKE wall and ceiling panels, paint, and

21   false testing. Allison is also aware of and mailed plaintiff's ADA Accomdation Request (Exhibit A) and

22   has supported the DENIAL of plaintiff's CDCR Form 1824. Seeking a constitutionally-approprate

23   accomodation. ( Please see: Exhibit – I, J, K and N).

24                        **Jeniffer Benavidez - Warden**

25           18) Jeniffer Benavides, Warden of the California Medical Facility (See: Penal Code 6100 et.seq.,

26   Listing her duties and responsibilities) She has consciously and personally seen these abhorrent

27   conditions herself (COM # 11), upon touring, and personally witnessing, the abhorrent conditions  first

28   as CMF's Chief Deputy Warden (CDW). She has also personally toured, and throughly inspected, all the

29   multi-leveled wings, and showers, A through Z as Warden. She consciously is AWARE of the institutions

30   Clearly Unconstitutional & UNSANITARY Condition through out CMF. (Exhibit K)

31           19) After an impromtu meeting with plaintiff in the main CMF corridor on June 23, 2022,

32   Benavidez proceeded to the G1-Shower Room in CTC to inspect it for the stated conditions. Plaintiff also

33   handed her a 1 inch thick manillia enveople which contained numerous documents including a 7 page

                                           10

1   document entitled **"DEATH & INFECTION – California Medical Facility"** (Exhibit K) dated May 27, 2022

2   written by plaintiff.  Fully detailing all information on the sewage, mold, mildew, rust and other

3   unsanitary conditions (COM #11). (See also: Exhibit A)

## Lt. Carlos Santos - PIO

5       20) **Defendant Lt. Carlos Santos, Public Information Officer** works directly for the Warden.  On

6   5- 16 -22 Robyn M. Temple called the main headquaters for **PIA-HFM** in Folsom, Ca. And spoke with

7   their Public Relations Department who then Called the Wardens Office at CMF and explained that Robyn

8   Temple (Family Member) had made a complaint about CMF PIA HFM Department **NOT cleaning the**

9   **shower and unit. (G1).** Lt. Santos then  called Robyn Temple who throughly outlined the condition of

10  the G1 Unit.  Lt. Santos informed Robyn that he would have **photo's** taken by the Investigators Unit. He

11  stated further that he would review **the history of 'Work Orders'** from the maintenance department,

12  and apprise the Warden (Benavidaz) of his investigation, and findings.

13      21) On 5-23-22 two investigators showed up and took a **"limited amount of photo's"** of the

14  shower room, and **none** of the **unit** itself.  Key areas were left **un-photographed**, in fact plaintiff was

15  present and watched investigator's **deliberately NOT photograph** the most **damaging areas**. The

16  investigator's would not speak with plaintiff... **Actually standing in the G1 shower room tells the real**

17  **story, one they cannot escape.**

18      22) On 6-23-22 plaintiff met with the **Warden MS. Benavidez** (COM # 18)  Plaintiff asked her if she had

19  received **Lt. Santos's investigation report.** Warden Benavidez did not hesitate in answering **"NO I did not"**

20  Robyn Temple made additional calls to Lt. Santos, yet there were no responces to her calls.  Lt. Santos sor the

21  Warden should be in possession of the photos.  It should be noted that Lt. Santos was deliberty indifferent to

22  the sanitation problems and plaintiff's plight. **He NEVER even stepped into the G1 Shower or unit, nor did he**

23  **file a report of the unsanitary conditions for the Warden.   He acted in the same manner as other prison**

24  **officials, and chose to cover the matter up, with his personal, and deliberate indifference. (Please also see:**

25  **Exhibts A, J, K and N).**

## OFFER OF PROOF

27      23) Plaintiff respectfully advances an **'Offer Of Proof'...** The Defendants with the exception of

28  the U.C. Davis Defendants, and Dr. J Clark  [Plaintiff's PCP],  all have tried to **minimize and cover-up**

29  **these abhorrent conditions.**  There is one salient fact that establishes, and solidifies, the veracity of

30  these conditions...**they CANNOT Hide them even if they wanted to...** they are there for a state, or

31  federal jury, or this Court, to witness. **THE FAKE PANELS, CAN, AND SHOULD COME DOWN.** There have

32  been many [? ][?] [?] photo's taken **of SOME** of these conditions.  The **"Offer Of Proof"** in this case is

33  standing in the middle of the CTC-G1 Shower Room **Yourself.**  Once compaired with 'work orders', and

11

1   new photo's the cover-ups are clearly apparent and salient. **CDCR Defendant's duplicity is**

2   **constitutionally Reveiling;**

3       24) Plaintiff has (By date) stood in the middle of the G-1 shower with defendants **Dr. M. Osman**

4   **(CME)** who elected to take **photos himself** of a 5 inch leaking sewage pipe on 6-2-22 and 7-1-22; **Dr.**

5   **Connor, (CMO)** on 5-18-22, 5-23-22, and 6-9-22; **Dr. J Clark, (PCP)** on 5-17-22, 5-23-22, 6-1-22, 6-3-22,

6   and 6-23-22; **Ms. LAL (Public Health Nurse)** on  5-24-22 (both Pub. Health Nurses ) 5-24-22; **L. Scott,**

7   **SRN II (Senior Supervising Nurse)** on 5-26-22, and 6-5-22; **Sam Martin (PIA-HFM Superintendent)** on 5-

8   19-22 , 5-20-22,  and many other witnesses that will be subpoenaed to testify as to what they have seen.

9   All of the above were asked by plaintiff if they  <u>WOULD SHOWER</u> In The G1 Shower...all but <u>one</u>  said

10  an <u>Unequivocal 'NO'</u>  The one exception was Ms. L. Scott. (Moral and Eithical Standard... ) (Decency

11  standard of a maturing society...) This is not what a maturing society expects, or accepts, in todays

12  world.

13      25) Plaintiff is **NOT** a maintenance expert, however, based on information and belief,  and

14  conversations with long-term maintenance personnel here at CMF, to include a plumber, **the <u>weird</u>**

15  **steel ceiling and wall panles are clearly a "COVER-UP" (<u>UNNATURAL CONSTRUCTION</u>)**  mold and

16  fungus are visably growing in the seams  of these panels strongly indicative that mold is growing **on the**

17  **<u>REVERSE</u> <u>SIDE OF THE PANALS</u>.  FORCING inmate painter's to 'wipe away this mold' places them at a**

18  **high-degree of RISK and is procedurally incorrect and an ILLEGAL way of dealing with mold, no hazmat**

19  **suits were used  when  dealing with these *deadly materials*. (Wanton Disregard for Human life) .**

20      26) Plaintiff was also informed and believes that to renovate the **G1 And G2 Showers**, as well as

21  those throughout CMF, **would cost millions of dollars in construction, building materials, and labor**

22  **cost which the California Department of Corrections at California Medical Facility <u>refuses</u> out-right to**

23  **pay.** To illustrate the Point, Warden Benavidez on 6-24-22, the day after she stood in the middle of the

24  shower room G1  had Maintenence painters (Russ and two inmates) once again come in and paint right

25  over the **'Rivit Hole'** leaking sewage down the wall, you can still see where the rust was leaking from the

26  rivit hole, the RUST is still there, black mold and the sea-shell type fungus were **wiped** from other areas,

27  and painted over by inmate painters. It is that same **fungus** and mold <u>UNDER THE CEILING Panels where</u>

28  <u>they CANNOT WIPE.</u> There is nothing they can do about the sewage draining from the 5 inch and 3 inch

29  sewer pipe <u>PAINT</u>  does not <u>STOP water</u> ...  <u>Painters</u>... <u>are</u> NOT Plumbers.

30              ## CDCR DEFENDANT'S CONTINUED

31              ## Lori Green (Medical Maint.)

32      27) **Defendant Lori Green (Medical Maintenance)** is aware of and has solicited & instructed

33  various maintenance departments to unconstitutionally cover up these conditions. Green's deliberate

                                        12

1  indifference to these conditions are the proximate cause of infections, and infectious deaths, here at
2  CMF, to include all three LVAD Patients (Plaintiff) her imput & orders to maintenance painter's to
3  engage in these cover-ups occurred on 6-3-22 and 6-24-22, and 7-5-22 (in part).

4        28) On 6-5-22 L. Scott, SRN-II provided Green with documentation outlining the conditions
5  (see: COM # 11) ( Exhibit A, and K) on 6-3-22; Dr. M. Osman, Chief Medical Executive, provided Lori
6  Green with photo's taken on his phone while standing with Plaintiff in the shower room. On 6-23-22
7  the Warden, and Associate Warden of Healthcare, provided Green with the the same list of conditions
8  (COM # 11)(Exhibit K). Green also has had personal Public Heath Dept. friends of her's come in on **6-13-**
9  **22** in further unknown attempts to cover-up her conscious acts. **(The Pub. Health Report, TEST Results,**
10  **and photos taken on 6-13-22 appear to be 'unavailable' to the general public and plaintiff, where are**
11  **they...)** Lori Green has personally stood in the middle of the G1 Shower on 6-13-22. Plaintiff was not
12  there to ask if she would herself shower there... she can however be subpoened to answer that
13  question. (Please also see: Exhibit K)

# Dr. Mohamednoor Osman – Chief Med. Executive

15        29) **Defendant Dr. Mohamednoor Osman, Chief Medical Executive,** has ingnored plaintiff's,
16  and others, **high risk of infection, and death.** Dr. Osman defends the unsanitary run down condition of
17  the **CTC G1 Shower and unit.** All the while clearly stating to plaintiff on 6-2-22 that he himself would
18  NOT shower there (afortiori). Dr. Osman Subsequently was a direct participant of The **American**
19  **Disabilities Act "RAP Hearing"** on plaintiff's **CDCR ADA Accomodation Request (CDCR Form**
20  **1824)(Exhibit J & K)** who denied plaintiff's request consciously knowing the abhorant condition of the
21  shower. **This a violation of (ADA) Title II of the American Disabilities Act of 1990 42 U.S.C. 12101 et**
22  **seq and 42 U.S.C. 12131 et seq, (Wanton Disregard for Plaintiff's health and life memorialized)(Exhibit**
23  **I and J ), (please also see: Exhibit K, L, and V) ( the photos of plaintiff's actual Infection).**

24        30) Dr. Osman not only defends the filthy conditions in G1 he consciously refuses to provide a
25  SAFE satellite shower **(As done in other facilities)** or transfer plaintifff to a SAFE Clean facility. Dr.
26  Osman has been clearly informed by plaintiff, and the other LVAD Patient (Barboza) that they **WILL NOT**
27  Shower in the G1 Shower **(Barboza 3 years with no shower, Plaintiff 2 years NO SHOWER)** this violates
28  **the United States Constitution's right to be free from cruel and unusual punishment . Discriminates**
29  **against them as ADA LVAD Heart Failure Patients, and denies them due process of law.** Dr. Osman has
30  told plaintiff that if he did not like the shower "To Bird Bathe in you room" (In plaintiff's tiny sink for
31  another 2 years? 5 years? 10 years...)(Because they have an unsanitary Shower) these remarks are
32  discrimintory in nature, and are dehumanizing, and demeaning. Imagin being told the same thing
33  ..."shower in your tiny sink for the rest of your life."

# David Hurtado, Associate Warden

2      31) Defendant David Hurtado, Associate Warden (AW) of 'Health Care Access Unit' (HCAU)
3   oversees the American Disabilities Act Reasonable Accomodation Request (CDCR Form 1824) for CMF
4   Warden Jennifer Benavidez (Exhibit –J). On or about June 6, 2022, David Hurtado who is in charge of
5   the HCAU Unit to include Unit G1 assembled and chaired a RAP Committee Meeting to review and deny
6   Plaintiff's CDCR Accomodation Form 1824 (Exhibit-A, and J).

7      32) Present at this meeting was Dr. Mohamednoor Osman who informed Hurtado of plaintiff's medical
8   condition, and plaintiff's susceptibility to infection (Exhibits F, G, & L). Ultimately Hurtado, and Warden
9   Benavidaz, had a chance to provide plaintiff with the ADA Acomodations needed, and consciously chose to be
10   deliberately indifferent to plaintiff's condition, and actual ADA needs. No acommodations, or solutions, were
11   ever rendered;

12      33) Hurtado wrongfully decided this important federal law matter (ADA) without ever stepping into
13   the G1 Shower, and Unit. Hurtado, before the decision, had the opportunity to check the duplicity and
14   varacity of other RAP Committe Members imput, and consciously chose not to (Deniability). Associate
15   Warden Hurtado, of Health Care Access Unit (HCAU) under his direct care has No Excuse not to consciously
16   know the unsanitary and unconstitutional condition of HCAU CTC Unit G1, and Correct the unconstitutional
17   conditions. It is infact, his duty, and responsibility. (Please see: Exhibit A, J, and K).

18      # Dr Joshua Connor – Chief Med. Officer

19      34) Defendant Joshua Connor, Chief Medical Officer, has stood with plaintiff on 5-18-22 and 6-9-22
20   and publically stated he would NOT shower in the G1 Shower to plaintiff. Dr. Connor ignores and is
21   deliberately indifferent to plaintiff's High Risk of infection, and death plaintiff faces in using the G1 Shower, and
22   having to live in a dirty-filthy unit. He refuses to use his authority as CMF Chief Medical Officer, or his
23   hippocratic oath to protect plaintiff from these hazards. Dr. Connor while serving as both plaintiff's and
24   Barbosa's (Personal Care Physician) has been consciously informed in detail of the unsanitary conditions (COM #
25   11) precluding their ability to shower in G1, while also consciouly knowing Both LVAD Patients have SUFFERED
26   SEVERE INFECTIONS (Exhibit K, L, & V) in G1 resulting in permanent-injury (Infected hearts, Blood, pumps, and
27   drivelines... and more) Both LVAD Patients almost lost their lives to these infectons (within hours of dying
28   according to Dr. Michael Gibibson at U.C. Davis Medical Center) (Plaintiff). Dr Connor is consciously aware of
29   plaintiff's increased high risk of infection and death due to Lymphocytopenia (Exhibit F and G), and while he
30   sought to determine additional facts because of plaintiff's poor low blood levels, the hemotolgist was
31   incorrect. Condition factors; (Please also see: Exhibit K, L and V).

14

## Dr. Johnson Clark – Personal Care Physician

**35) Dr. Johnson Clark , Physician & Surgeon, (PCP)** is plaintiffs current Personal Care Physician. It is difficult to estimate how many times Dr. Clark has stood in the middle of the G1 Shower. He has been honest about how dirty, and filthy, Unit G1 really is. Dr. Clark has informed plaintiff that he has to clean off the bottoms of his shoes 3 times before getting into his car in the parking lot, he will not wear his shoes into his home. Dr. Clark has stated that this G1 Hospital Unit is the worse he has ever seen. Dr. Clark has went out of his way to speak with PIA-HMF maintenance personnel so he could understand just how filthy and unsanitary the Unit is. Plainiff respects the fact that Dr. Clark has spoken honestly and forthright about these conditions, however, Dr. Clark advances that he is powerless against the administation, and refuses to take the necessary steps needed to have plaintiff transfered to a clean safer facility (environment).

36) Dr. Clark is a good doctor, however, his lack of his ability to make even a conscious recommendation to protect plaintiff from the filthy unsanitary environment is totally absent, and tandamount, in this case, to <u>NO ABILITY</u> to protect plaintiff. If he did, CDCR would cancil or not renew his annual contract, for not following their **unconstitutional guidelines**. Dr Clark, as plaintiff's personal care physician, has a duty to his patient <u>first</u>, and <u>formost</u>, and the duty of care to actually protect plaintiff from infection, and death, is consciously and deliberately absent. He cannot work at CMF and claim to uphold his hippocratic oath... None of the CDCR Defendand's can... it is fact a <u>anti-oath</u>..oath; **(please also see: Exhibt A, J and K, L, & V).**

## Dr. Michelle Ditomas

37) Dr. Ditomas is another good doctor. She fights to get patients released from prison at the end of their lives, and goes out of her way to get specialized treatment for others. **She is exceptional in many ways** . However, she does nothing in the application of **"<u>wholistic Medicine</u>"** as it pertains to **a constitutional clean and sanitary living environment, Outdoor exercise,** and the infectious conditions, or death, that can result. Dr. Ditomas was Chief Medical Executive leading upto, and during Plaintiff's 12-17-20 Severe Infection when he almost died. She has toured and inspected CTC Unit G1 **many times,** and consciously has **no reason to NOT know the unconstitutionality of the G1 Unit <u>Shower</u> and <u>Unit</u>.** The sanitation in G1 is so bad it is in fact difficult to imagine someone **NOT Knowing** that it a clear Constiutional Violation under the eighth amendment .

38)    The unsanitary-conditions prevailent throughout CMF have been right in front of her, there is absolutly no reason to not know of these conditions, and it is in fact her responsibility while working at CMF. These conditions have existed **for many years, maybe even decades,** Plaintiff, based on information and belief believes it is **not possible** to work as the **"Chief Medical Executive"** of a medical facility, and **NOT CONSCIOUSLY KNOW** of these unsanitary and unconstitutional conditions existance. Where a unconstitutional condition exist, there is a correspondent-responsibility to identify, and correct it, under both state and federal Law. **(See: Exhibt A and K, L, and V, )(Photo's, and Letter from Dr. Walden, UCD, Contagious and disease specialist).**

# ANCHAL LAL - PUBLIC HEATH NURSE

2        39) Defendant Anchal LAL – CMF Public Health Nurse is directly responsible and trained in the
3  identification of contagious and infectous disease.  She is directly responsible for **UNCONSTITUTIONAL**
4  **CONDITIONS** existing at CMF CTC G1.  Prior to becoming Public Health Nurse Ms. LAL worked in G1 for a
5  substanial period of time on third watch. Plaintiff sought Ms. Lal's help on 6-23-22 and asked her to inspect and
6  tour the CTC G1 Shower and unit, to her credit she and another another public health Nurse showed up on 6-24-
7  22 and stood in the middle of the G1 Shower with plaintiff, while he outlined and showed them, the actual
8  conditions COM # 11.  Plaintiff provided Ms. Lal with copies of his inmate grievances and his 1824 Accomodation
9  Form (Exhibits A and K)  Ms. Lal excepted the mentioned documents including  the May 27, 2022, 7-Page
10  document entitled  **"Death & Infection – California Medical Facility" (Exhibit K).**  Ms. Lal specifically did not
11  report the matter to the **California Public Health Department Contagious and Infectous Disease Unit in**
12  **Sacramento, or the District Office in Santa Rosa. (Deliberate Indifference)**

13        40) Plaintiff specifically showed Lal the **Tetanus (Acute Infectous Disease)("Clostridium Tetani")** on the
14  walls and window sill which is RUST. Plaintiff had placed blue colored signs all over the shower room in each
15  indentified problem area  stating the issue, (Exhibit N). There was also tenanus on the left wall where sewage
16  had leaked through a **"rivit hole"** (also Identified) (Exhibit N). Ms. Lal did not write a report, even though she
17  agreed with some of the horrorable conditions in the shower, or share what she was seeing,  with her
18  supervisor. Ms. Lal stated she would not take any photos.

19        41)  Ms. Lal has while working in G1 prior to becoming Public Health Nurse **has changed plaintiff's LVAD**
20  **Dressings (Bandages) to keep infection out of his sergical wound opening.**  Ms. Lal also prepaired, and
21  administered plaintiff's **IV Antibotics** after plaintiff caught **his Corynebactrium Striatum in December of 2020.**
22  Ms. Lal has no reason or excuse to NOT consciously know that the shower room was and **still is very dangerous,**
23  **and unconstitutional. (All showers throughout CMF).** Ms. Lal has shown a wanton disregard, and deliberate
24  indifference, toward these unconstitutional conditions at great risk to plaintiff's health, safety, and life.

25

# Lanie Scott – SRN – II

26        42) Lanie Scott SRN-II is a very good Nurse Supervisor for the Nurses, CMF, and CDCR. However, there is
27  absolutely no excuse, or value orientated reason, for her justification of what she knows is imoral, or uneithical
28  concerning the abhorrorant conditions of the G1 Shower room.  Plaintiff personally showed her the conditions
29  one by one on 5-26-22, and 6-5-22.  Plaintiff asked her if she would shower in the G1 Shower...**She Said**
30  **YES**...she is the **ONLY Medical Professional** to say she would.  Plaintiff is informed and believes that L.  Scott said
31  yes because she could not ask, or direct G1 LVN's, and RN's to shower G1 Patients in the shower, if  she herself
32  would not do so.

33        43) L. Scott owes plaintiff a special duty of care under State & Federal Law to insure plaintiff (as well as

16

1   many others under her care) is not harmed (infected) or killed as a result of these unconsititutional conditions
2   in Unit G1. She consciously knows that the unsanitary conditions are, and have been there, for years. However,
3   she does nothing to effectuate real change for those under her care. A great many inmates are infected in the
4   present that can be linked to the conditions found in the G1 Shower Room, and Unit. Scott is deliberately
5   indifferent to these conditions, and has in the past stopped plaintiff, from cleaning the unit himself, when no
6   one else would, her choice was just to leave it dirty, filthy, and unconstitutional. Under these unconstitutional
7   conditions, and practices, plaintiff faces even a greater danger of being infected, and dying, she tells plaintiff
8   that everything will be 'alright' when she consciuously knows it will NOT. (L. Scott exhibits a Wanton disregard
9   for plaintiff's health, safety, and life).

## Dr. LORI AUSTON – California Dept. Of Public Health

11   44) Dr. Lori Auston of the California Department of Public Health in Santa Rosa is the Former Chief
12   Medical Executive at CMF. She is also the Former (or Present) CEO of the California Department of Public
13   Health in Santa Rosa Office covering several counties to include Solano County. (Exhibit M).

14   45) While actively employed as Chief Medical Excutive (CME) at CMF (to include her other possitions
15   held prior thereto at CMF) Auston has personally toured and throughly inspected the unsanitary conditions at
16   the California Medical Facility on numerous occasions, witnessing 'first-hand' the poorly maintained, run
17   down, unsanitary conditions spoken of in this complaint. (COM #11). Dr. Auston inapproprately, and illegally
18   'covered up' these unconstitutional violations/conditions with FAKE wall and ceiling panels, paint, and false
19   testing not only while she was CME at CMF, but illegally, and consciously, carried that specific- knowledge
20   with her to her new job in the Public Health Department where she became CEO. The Public Heath
21   Department oversee's and inspects complaints of contagious, and Infectious disease, and unsanitary
22   conditions that could easily lead to serious infections, and Infectous DEATHS in Solano County. Dr. Lori
23   Auston is consciously aware of the "High Number" of infections, and infectious deaths occuring during her
24   employment at CMF, it is fact her responsibility to consciously know these numbers.

25   46) In doing so Dr. Auston layed the foundation, and deliberately hid the deadly conditions, that killed
26   the first LVAD Patient (Laurenzano)(2013), and placed other LVAD Patients (and all Patients) at risk (If not
27   directly responsible) for the SEVER INFECTIONS Suffered by both LVAD Patients that came very close to killing
28   them (Temple & Barboza) (Corynebacterium Striatum)(See: Exhibit G, L, and V). Dr. Auston has shown a wanton
29   disregard for plaintiff's and other patients safety, injury, and life. She has been deliberately indifferent to the
30   high risk infections that could, and has resulted, from her duplicty, and dishonesty.

## Dr. Thomas J. Aragon – California Department of Public Health

## Licensing & Certification Of State Facilities To Include California

## Medical Facility (CMF)

17

1     Aragon is the Director. And State Public Health Officer that issues License to State

2     Facilities to include California Medical Facility in Vacaville Ca. Dr. Aragon is directly responsible for issuing the

3     state license # 550000726 to CMF for the Correctional Treatment Center (CTC) where plaintiff is directly

4     housed, in accordance with the applicable provisions of the Health & Safety Code of California, and its rules and

5     regulations. (See: Exhibit O, License)

6           48) Dr. Aragon has issued the License consciously knowing that The CTC-G1-Hospital is a contagious

7     and infectous nightmare. Dr. Aragon has shown a conscious and wanton disregard, and Deliberate Indifference

8     to plaintiff's Safety, injury (infection) , and death. How does the Department of Public Health issue a license to

9     a State Facility (CMF # 550000726) when the facility is in clearly unconstitutional condition (COM # 11)( Also

10    See: Exhibit I, O, and P). The licensing of CMF also is an ADA Issue according to, and specifically related  to,

11    ACCESS (shower) Title II of the American Disabilities Act of 1990, 42 U.S.C. 12101 et seq; and 42 U.S.C. 12131

12    et seq, see also Exhibits L & V).

## SAM Martin – PIA-FHM Superentendant

14           49) Sam Martin is Superentendant of "Prison Industry Authority -  Facilty Healthcare  Maintenence

15    (PIA-FHM). Mr Martin has personally toured and throughly inspected  the unsanitary conditions at the

16    California Medical Facility with plaintiff on two occations, and numerous occasions with others,  witnessing

17    'first-hand' the poorly maintained, run down, unsanitary conditions spoken of in this complaint. (COM #11).

18    Plaintiff met with Martin on 5-19-22 and 5-20-22 and gave him a 'personal tour' of the unconstitutional

19    conditions found both in the G1 Shower Room, and Unit overall, to include fecal matter, and urine, food stuffs

20    and who knows what other substaces. At the time the floor had not been properly cleaned in 6 weeks. Sam

21    Martin and his supervisors, and inmates consistanly lie in their paperwork the they were cleaned, NOT so.

22    Sam Martin also told plaintiff "If you do not like the conditions then shower in your cell", plaintiff informed

23    Martin that he had a consititutional right to "SHOWER" just like anyone else, ADA Accessability.

24           50) Plaintiff was told by Martin that COVID- 19 was the reason G1 was so filthy, and unsanitary, however

25    this was untrue, his workers were not placed on Quartine for many weeks leading upto this period. There was

26    no work supervisor and has not been one for months for the "Hospital" (CTC). Plaintiff asked Martin how the

27    G1 "Hospital" was suppose to operate, and maintain  constitutional levels of cleanliness without a work

28    supervisor, and workers, what was suppose to happen...we just leave the "Hospital" uncleaned for

29    approximately 2 months? Does this happen at U.C. Davis, Vaca Vally Hospital and others? Sam Martin and

30    his inability to maintain work supervisor's and workers is the proximate cause of the constitutionally deficient

31    condition of G1. Martin refused to accept responsibility for his failures, and insisted that everything is "Clean".

32    Martin had another PIA Administrator come in and start testing with some type of digital meter. This individual

33    would not test the walls and floors before hand, he would wait and lay down several Layers of Cell Block 64,

34    then test the Cell Block 64 (Fake Testing) (Exhibit A & K) Martin went on to tell the CMF Adminstration that

18

1   every has Martin - duplicity and dishonesty is going to Catch up with him in a court of law.  Not

2   only has Martin lied, his employees are willing to be subpoenaed as witnesses to testify to his dishonesty.

3         51) If this Court or a Jury were to tour G1 they could plainly see the duplicity of Martin and his workers,

4   the unit is still the **same** to this date.  Sure they have waxed right over fecal matter and urine and memoralized

5   their failure right into the floor.  **Plaintiff would like to give, and has, a tour of this unconstitutional facility.**

6   Martin owes plaintiff a special duty of care to insure plaintiff (as well as many others in G1)  are not harmed

7   (infected) or killed as a result of these **unconsititutional conditions** in Unit G1.  He consciously knows that the

8   unsanitary conditions are, and have been there, for years,  however he consciously, and wantonly chooses, with

9   deliberate indifference to NOT end these unconstitutional conditions that are still apparent today.  His workers

10   WAXED right over fecal matter to 'create a shiney floor'.  (dose not work, only memorallizes  the failings,

11   because something is shiney does not mean it is clean, it is in this intance, still easy to see the right through the

12   wax)

13   ## BILL DAVIDSON – General Manager - Prison Industry Authority

14         52) Defendant Bill Davidson is the General Manager of CA-PIA-HFM, and has showed a conscious

15   deliberate indifference to plaintiff's serious risk of infection and death due to the deadly conditions that prevail

16   at CMF.  Plaintiff has written Davidson letters  (Exhibit Q) and had his family call Davidson, the letters included

17   additional documentation (Exhibit A),  Plainitff's Sister Robyn Temple left phone messages on his phone

18   outlining the unsanitary conditions on or about May 27, 2022.  Davidson deliberately igonred plaintiff's family,

19   and the unsanitary conditions (**Deniability**).  Davidson has sent inspector's to CMF in the past, and has no reason

20   to not consciously know the unconstitutional conditions of CTC G1.  Plaintiff has been informed and believes

21   that **Davidson has personally toured and seen these conditions (They've been there for years) and consciously**

22   **done nothing about them, showing a wanton disregard for plainitff's Health Safety and possible Death.**

23   VI.

24   **Plaintiff's Injuries**

25   **Infliction Of Emotional & Mental Stress (Trauma)**

26         53) Plaintiff was told by the **U.C. Davis LVAD Team** that he would be able to Shower, and that he would

27   be provided with the **'specialized shower gear'** he would need to do so **safely (Exhibit E, L, & U).**   The LVAD

28   Team who Plaintiff has a great deal of respect for, **approved** plaintiff to shower. **It was an important issue to**

29   **plaintiff.**  Plaintiff had no idea or real way of knowing that CMF-G1 was in such poor, unsanitary & run

30   downshape, and that taking a shower in the G1 Shower room could in fact kill plaintiff.

31        54) At first, after learning about the unsanitary condition, plaintiff thought he could just **'Ruff-it-out"**

32   **and "Bird Bathe"** in his hospital rooms **tiny little sink,** and did so from July 14, 2020 to the filing of this legal

1    action, thinking that it was just what had to take place While at CMF. It had a mental health affect on plaintiff
2    from the begining but plaintiff thought he could **"Handle It"**. It was also dangerous with a wet floor and no
3    gaurd-rails to hold on to. Plaintiff eventually fell, he is 62 years old with Heart Failure, he fell on his left hip
4    severely brusing it because of the "Blood Thiners" plaintiff is required to take to prevent 'Blood Clots' in his
5    LVAD System, and body. Plaintiff also hit his head on the door during the fall. Had Plaintiff hit his head full-on
6    it could have easily resulted in DEATH (Blood Thiners...).

7    55) Plaintiff did not consciously know that being in this situation for 2 years was taking an emotional and
8    physical toll on his mental health until it finally caught up with him on **May 15, 2022, (really bad)**. Plaintiff
9    broke-down with the depression washing over him in waves, some of the worst depression he had EVER
10    experienced. (Plaintiff has a history of sever depression DSM-IV TR 292.33)(Which defendants are well aware
11    of). Plaintiff sat on the floor in tears feeling emotional pain & physically hurting really bad. *Plaintiff decided*
12    *there was NO WAY he could live this way any longer,* and that *he NEVER SHOULD OF ALLOWED THIS TO*
13    *BUILD TO THIS POINT AND DEGREE . (See: Exhibits S, T , R, and V), Mental Health Reports from U.C. Davis,*
14    *and CMF Mental Health Doctors). Emotional pain actuall physically hurts, and is painful. So Painful that*
15    *Plaintiff wants, and has officially asked for, The U.C. Davis LVAD TEAM Doctors (UCD Defendants) to schedule*
16    *an "LVAD REMOVAL Sergury" Date (See: Exhibit R) and just let plaintiif bleed out on the table after LVAD*
17    *removal. (Per Contract plaintiff has the right to have his LVAD Removed) Plaintiff would rather be dead.*

18    # Severe Infection - Injury

19    56) On December 17, 2020, plaintiff was **SEVERELY INFECTED** (Exhibit V) with *(CORYNEBACTRIUM*
20    *STRIATUM*)(Bacterium & Sepsis) plaintiff was bleeding through both nostrils, his left ear, his penis, and
21    leaking green and yellow pus from the driveline site. Plaintiff's Heart, Blood, was _infected_, so was the LVAD
22    Pump, and the Driveline, which was directly precipitated by the infectous-conditions experienced and found
23    at CTC G1 CMF. Plaintiffs infection is NOT Normal, causes up to 6 deaths per 21 individuals, and is transmitted
24    from PERSON TO PERSON. (Exhibit G);

25    57) Plaintiff was tested at U.C. Davis for all infections prior to his LVAD Sergury on June 22, 2020.
26    Plaintiff was also tested for all infections after his sergury right up to his July 14, 2020, Discharge from U.C. Davis
27    Medical Center. *Plaintiff was infection free  upon arriving at the California Medical Facility in Vacaville,*
28    *California on July 14, 2020.* Plaintiff was told later by Contagious and infectous Disease Doctors at U.C. Davis
29    that there is no evidence that there was a **CORYNEBACTRIUM STRIATUM Outbreak** *at U.C. Davis from June 22,*
30    *,2020 and December 17, 2020 where plaintiff is a patient on the 6th Floor Cardiothoractic Progressive Care Unit*
31    *which is mostly Heart patients* ...(Nothing). Plaintiff was very sick on December 17, 2020 when he was
32    transported to U.C. Davis **"Code 3 "** Plaintiff was not eating or drinking water, sleeping 24 hours a day, plaintiffs
33    Vit K Levels went to **ZERO**, and Plaintiffs INR went to 14 then 17 (**Blood like water**) Plaintiff was bleeding from
34    his nose, left ear, and penis. There was a substantial amount of green & yellow pus emitting from his LVAD

1    Driveline site, and had been for several days. (Photo's Ex. V)

2    58) U.C. Davis LVAD Cardiologist Michael Gibson told plaintiff that he was glad that plaintiff arrived at
3    UCD when he did, because he wouldn't have lived but for a few more hours.  Over the next few days plaintiff
4    saw numerious *Contagious and Infectious Doctors* who asked plaintiff a lot  of detailed questions (if not **ANGERY**
5    Ones).    Plaintiff is perminately infected with *CORYNEBACTRIUM STRIATUM* for LIFE,  Plaintiff will be on
6    <u>suppressive antibiotics</u> for the rest of his LIFE.  Plaintiff is <u>depressed</u> beyond belief in the present.  (Exhibits
7    See: Letter from Dr. Walden, U.C. Davis Contagious & Infectous Specialist , Exhibt V). See: Also Mental Health
8    Records Exhibit S, T, & U).

9                                    # FUTURE LONG-TERM INJURY

10    59) Plaintiff will be seriously affected  long term and suffer for the rest of his life.  Plaintiff has been
11    traumatized emotionally, and physically, through the Individual, and Collective acts and omissions of the
12    defendants. (Exhibits G & V)    Plaintiff will continue to suffer irreparable harm, both to his mental ,and
13    physical health.

14                                        # VII.

15                                    # Causes Of Action

16    ## First Cause of Action:

17    (42 U.S.C. 1983, 8th Amendment to U.S. Constitution)(Temple v. Gibson):

18    60) The alligations contained in paragraphs 1 through 59, inclusive are hereby incorperated by
19    reference.

20    61) Defendants Gibson, Ebong, Cadeiras, Dawar,  Allison, Benividez, Santos, Hurtado, Osman,
21    Connor, Clark, Ditomas, LAL, Scott, Auston, Green, Aragon, Martin,  and Davidson have  violated plaintiff's
22    right to be free from cruel and unusual punishment guaranteed to the plaintiff by the 8th Amendment of the
23    United States Consitution, by their deliberate indifference to Plaintiff's Risk of Serious Injury, and Death due
24    to severe infection,  caused by unsanitary conditions, and other violations of law, against plaintiff.

25    62) Defendants  Gibson, Ebong, Cadeiras, Dawar,  Allison, Benividez, Santos, Hurtado, Osman,
26    Connor, Clark, Ditomas, LAL, Scott, Auston, Green, Aragon, Martin,  and Davidson have  violated plaintiff's
27    right to be free from cruel and unusual punishment guaranteed to the plaintiff by the 8th Amendment of the
28    United States Consitution by promoating,  abiding by, and ignoring plaintiff's right to accessability to shower
29    in a 2 year period, due to unconstitutional, and unsanitary conditions, that could kill plaintiff, who is at **high
30    risk of infection, and DEATH**, (Exhibit V) **due to low blood levels, and having a serious form of __ANEMIA__
31    called** __Lymphtopenia,__  **Exhibit G), witch includes being  a LVAD Recipient.**

32    63) All Defendant's wrongfull actions alleged herein are in violation of 42 U.S.C  1983 because

21

1    Case 2:22-cv-00047-... they have deprived plaintiff of rights, benefits, and privileges secured by the United States Consitution.

2          64) All defendants acted under color of State Law.

3          65) All Defendants knew, or should have known, that their conduct, attitudes, and actions
4    created an unreasonable risk of serious harm to plaintiff, and still do.

5          66) Plaintiff has suffered and will continue to suffer in the form of his current & perminate
6    infection *(CORYNEBACTRIUM STRIATUM)*, and his having to take suppressive antibotics for a life-time.
7    **Plaintiff is informed and believes that this severe infection is the proximate cause of defendants actions**
8    **individually and collectively. Plaintiff is informed and believes that the current antibiotic can wear off and**
9    **become ineffectual in time. Plaintiff is succeptable to death at any time. (Exhibit V).**

10         67) An actual controversy exist between plaintiff and defendants concerninng their rights,
11   privileges, and obligations.

12         68) As a direct and foreseeable result of defendants violations of the 8th Amendment, plaintiff
13   has suffered, is suffering, and will continue to suffer injuries in the form of pain, and suffering, shame,
14   humiliation, degradation, emotional distress, embarrassment, mental distress and other injuries.

15         69) All Defenants acts were willful, intentional, malicious, wanton, and dispicable in conscious
16   disregard of plaintiff's rights, entitling plaintiff to an award of Compensary & Exemplary damages in the
17   amount of **$1.00 (one dollar)...** Plaintiff does not want, or need, tax payer money. Punitive Damages in the
18   amount to be determined by a jury, at jury trial.

19   ## Second Cause of Action:

20   (42 U.S.C. 1983, Forteenth Amendemnt) (Equal Protection Clause)

21   Temple v. Gibson

22         70) The allegations contained 1 through 69 inclusive, are hereby incorperated by reference.

23         71) Defendants Gibson, Ebong, Cadeiras, Dawar, Allison, Benividez, Santos, Hurtado, Osman,
24   Connor, Clark, Ditomas, LAL, Scott, Auston, Green, Aragon, Martin, and Davidson have violated plaintiff's
25   right to Equal Protection and to be free from dicrimination guaranteed to the plaintiff by the 14th
26   Amendment of the United States Consitution. *Plaintiff is a "QUALIFIED INDIVIDUAL WITH A DISABILITY"*
27   **Plaintiff is ADA Qualified individual due to his** <u>SEVERE</u> **Heart Failure, High risk of infections, and**
28   **Succeptability to infections due to unsanitary conditions, (Rehabilitation Act of 1973, Section 504 ) The**
29   **licensed Public Enity California Medical Facility also is an** <u>ADA Based Facility</u> **according to, and specifically**
30   **related to,** <u>ACCESS</u> **(shower) and Title II of the American Disabilities Act of 1990, 42 U.S.C. 12101 et seq;**
31   **and 42 U.S.C. 12131 et seq, (more).**

32         72) Defendants have at all times herein acted under color of state law.

33         73) All Defendants knew, or should have known, that their conduct, attitudes, and actions
34   created an unreasonable risk of serious harm to plaintiff, and still do.

22

1 Plaintiff has suffered and will continue to suffer in the form of his current & perminate

2 infection *(CORYNEBACTRIUM STRIATUM)*, and his having to take suppressive antibotics for a life-time.

3 Plaintiff is informed and believes that this severe infection is the proximate cause of defendants actions

4 individually and collectively. Plaintiff is informed and believes that the current antibiotic can wear off and

5 become ineffectual in time. Plaintiff is succeptable to death at any time (Exhibit V).

6      75) An actual controversy exist between plaintiff and defendants concerninng their rights,

7 privileges, and obligations.

8      76) As a direct and foreseeable result of defendants violations of the 8th Amendment, plaintiff

9 has suffered, is suffering, and will continue to suffer injuries in the form of pain and suffering, shame,

10 humiliation, degradation, emotional distress, embarrassment, mental distress and other injuries.

11      77) All Defenants acts were willful, intentional, malicious, wanton, and dispicable in conscious

12 disregard of plaintiff's rights, entitling plaintiff to an award of **Compensary & Exemplary damages** in the

13 amount of $1.00 (one dollar)... Plaintiff does not want, or need, tax payer money. Punitive Damages in

14 the amount to be determined by a jury, at jury trial.

15 ## Third Cause Of Action

16 (State Common Law Medical Malpractice, Crimnal & Gross Negligence)

17 Temple v. Gibson:

18      78) The alligations contained in paragraphs 1 through 77, inclusive are hereby incorperated by

19 reference.

20      79) All Defendants with the exception of defendants: Benavidez, Santos, Green, Martin, and

21 Davidson, failed to use the degree of skill, knowledge, or care that is usual amoung medical professionals

22 of good standing in the community, and that the facts setforth in 1 through 78 and that those acts and

23 omissions were the "Proximate Cause" of plaintiffs injuries.

24      80) Plaintiff can bring Medical Malpractice actions against health care staff who are CDCR

25 employees, or CONTRACTORS (U.C. Davis Defendants), Government Code 844.6 (d): Government Code

26 845.6 et. seq. Also see

27      81) All Defendants knew, or should have known, that their conduct, attitudes, and actions

28 created an unreasonable risk of serious harm to plaintiff, and still do.

29      82) Plaintiff has suffered and will continue to suffer in the form of his current & perminate

30 infection *(CORYNEBACTRIUM STRIATUM)*, and his having to take suppressive antibotics for a life-time.

31 Plaintiff is informed and believes that this severe infection is the proximate cause of defendants actions

32 individually and collectively. Plaintiff is informed and believes that the current antibiotic can wear off and

33 become ineffectual in time. Plaintiff is succeptable to death at any time. (Exhibit V)

34      83) An actual controversy exist between plaintiff and defendants concerninng their rights,

23

1  privileges, and obligations.

2  84) As a direct and foreseeable result of defendants violations of the 8th Amendment and
3  California State Law, plaintiff has suffered, is suffering, and will continue to suffer injuries in the form of pain
4  and suffering, shame, humiliation, degradation, emotional distress, embarrassment, mental distress and
5  other injuries. , Crimnal & Gross Negligence are alleged.

6  85) All Defenants acts were willful, intentional, malicious, wanton, and dispicable in conscious
7  disregard of plaintiff's rights, entitling plaintiff to an award of **Compensary & Exemplary damages in the**
8  **amount of $1.00 (one dollar)... Plaintiff does not want, or need, tax payer money. Punitive Damages in**
9  **the amount to be determined by a jury, at jury trial.** , Crimnal & Gross Negligence

10 # Fourth Cause Of Action

11 (State Common Law Assualt & Battery))

12 Temple v. Gibson:

13  86) The alligations contained in paragraphs 1 through 85, inclusive are hereby incorperated by
14  reference.

15  87) Plaintiff **alleges Assault & Battery on all defendants. Defendants consciously knew or**
16  **should have known plaintiff was at high risk of infections, and infectous death. Consciously Knowing this**
17  **they continued to defend, and perpetuate these conditions, consciously   knowing they would seriously**
18  **injure plaintiff (Specific Intent). In doing so they not only acted with wanton desire to harm plaintiff,**
19  **specifically they knew they were doing so. Plaintiff is infected for the rest of his life (Exhibit V).**

20  88) All Defendants knew, or should have known, that their conduct, attitudes, and actions
21  created an unreasonable risk of serious harm to plaintiff, **and still do.**

22  89) Plaintiff has suffered and will continue to suffer in the form of his current & perminate
23  infection *(CORYNEBACTRIUM STRIATUM*), and his having to take suppressive antibotics for a life-time.
24  **Plaintiff is informed and believes that this severe infection is the proximate cause of defendants actions**
25  **individually and collectively. Plaintiff is informed and believes that the current antibiotic can wear off and**
26  **become ineffectual in time. Plaintiff is succeptable to death at any time.**

27  90) An actual controversy exist between plaintiff and defendants concerninng their rights,
28  privileges, and obligations.

29  91) As a direct and foreseeable  result of defendants violations of the 8th & 14th Amendment and
30  California State Law, plaintiff has suffered, is suffering, and will continue to suffer injuries in the form of pain
31  and suffering, shame, humiliation, degradation, emotional distress, embarrassment, mental distress and
32  other injuries. , Crimnal & Gross Negligence .

33  92) All Defenants acts were willful, intentional, malicious, wanton, and dispicable in conscious
34  disregard of plaintiff's rights, entitling plaintiff to an award of **Compensary & Exemplary damages in the**

24

1   amount of $1.00 (one dollar). Plaintiff does not want, or need, or is not, does not pray Punitive Damages in

2   the amount to be determined by a jury, at jury trial.

## Prayer For Relief

4   Wherefore, plaintiff respectfully prays for relief as follows:

5   1.) Issue a declaratory judgement that defendant's actions complained of herein violated

6   plaintiff's rights under The U.S. and California Constitutions and as otherwise alleged herein;

7   2) Award Plaintiff monetary damages in the amount of 1.00 in compensary damages, and

8   Punitive Damages, in the amount to be determined at jury trial.

9   3) Award plaintiff the cost of the suit, and reasonable attorney's fees under state and federal

10  law;

11  4) Grant plaintiff such other and further relief as the court deems just and proper.

12  Dated: October 26, 2022.

13  Respectfully Submitted,

14

15  _Troy Alexander Temple_

16  Troy Alexander Temple,

17  Plaintiff In Propria Persona

## VERIFICATION

19  I, Troy Alexander Temple, sware under the penalty of purjury, that the above was written by my own

20  hand, and that it true and correct to the best of my knowledge.  This Day of _26_____ October , 2022. At

21  Vacaville, Ca.

22

23  _Troy Alexander Temple_

24  Troy Alexander Temple,

25  Plaintiff In Propria Persona

26

27

28

29

| County Of Solano | ) | | D E C L A R A T I O N |
|---|---|---|---|
| | ) | | O F |
| | ) | ss. | Troy Alexander Temple |
| State of California | ) | | |

I, Troy Alexander Temple, state and declare that I could competently testify to the contents of this declaration under penalty of perjury to wit:

1) That I am above the age of 18;

2) That I reside in Solano County, in Vacaville, California;

3) That I have been a resident for more than 6 months;

4) That I am the Plaintiff in a Federal & State Case Entitled Troy Alexander Temple vs. Dr Michael Gibson, U.C. Davis, et. al. This case is a 42 U.S.C. 1983 Civil Rights Case Alleging Cruel And Unusual Punishment Under The 8th Amendment (No Shower for 2 years); Deliberate Indiffence To a Serious Health Risk (Infection); American Disability Act Violations (Discrimination)(The Right to shower) under the 5th and 14th Amendment of the United States Constitution; Criminal Negligence State Common Law; and Assault & Battery;

5) That I am an Left Ventrical Assist Device (LVAD) Patient at California Medical Facility. The LVAD System is a computerized Heart Pump which runs at 5200 RPM's and circulates 4.9 Leters of blood through my body per minute; I have an open surgical wound that accomodates the "Driveline" that runs the computer appications and supplies electrical power to the LVAD Pump which is afixed to the bottom of my heart, this surgery was 2-Million Dollars with custody cost; and took 9 ½ Hours on the table;

6) That because I have an open surgical wound I am particalarly vulnerable to catching a serious infection. (Ask U.C. Davis for the stats);

(1)

7) That I had this surgery on June 22, 2020,  because my heart had been destroyed by Covid-19 in March of 2020. I have <u>NO</u> <u>Pulse</u> Now (<u>none</u>)

8) That on July 14, 2020 I was Transported to the California Medical Facility at Vacaville Ca. and housed in the Central Treatment Center (CTC), G1- Hospital after being discharge from ICU At U.C. Davis;

9) That it took several months (2 to 3) to obtain permission from LVAD Cardiologist (Gibson, Ebong, Cadeiras, and RN Coordinator) to be able to shower as promised by them before the LVAD Surgery. Plaintiff was given "Specialized Shower Equiptment" by U.C. Davis; It has NEVER been USED;

10) Temple asked the other LVAD Patient in the CTC-G1-Hospital (Barboza) what he normally does for the shower. Barboza informed Plaintiff that he <u>has never</u>, and <u>would</u> <u>never</u>, shower in the CTC-G1-Hospital Shower due to the "<u>HIGHLY UNSANITARY CONDITIONS</u>" of the Shower Room.  He stated he did NOT want to catch '<u>another</u> <u>infection</u>' Barboza has had two (2) Very-serious infections while in G1;

Plaintiff inspected the CTC-G1-Hospital shower room and witnessed the following:

- The shower floor, from the doorway to the back of the shower, had missing caulking between the floor tiles, the tiles were also very pourus. The Tile is *67 years old;*
- It appeared, based on plaintiff's experience (More than A decade) of being a building-porter, and shower-cleaner, at various institutions, that the floor was not only coated in soap scum, but fecal matter, urine, blood, puss, semen and more [Everything Hospital Patients would wash off their bodies], but the same substances have <u>SEEPED</u> <u>UNDER</u> the <u>TILES</u> where the caulking was missing;
- The walls of the shower room were also covered in soap scum containg all the above Substances;
- There is "RAW SEWAGE" from a 5 inch Sewer Pipe on the ceiling of the shower room that is running down both sides of the walls <u>, and underneath the ceiling panels</u>. The pipe is rusted out where it goes <u>into</u> the wall. They wipped off the outside wall 6-10-22 but the raw sewage is still on the <u>inside</u> of the wall  and ceiling panel. There is a "<u>Grey Water</u>" 3 inch Sewage pipe on the left hand side of the ceiling that is <u>leaking</u> <u>inside of the wall panel</u> and egressing out of a <u>"RIVIT HOLE"</u> in plain sight.



- The "metal panels" spoken of were put up in the shower several years ago [according to long term maintenance staff] to "COVER-UP" the mold and mildew growing on the bare walls behind the panels;
- The window sill in side of the actual shower is "rusted out" and could cause Tetnus which is a contagious and infectous disease ("Clostridium tetani") Which is very dangerous;
- There is Black-Mold everywhere throughout CMF. Medical and custody Staff told me that it is NOT Black Mold, I asked them [based on myown training] if they were actually certified and trained professionals when it came to Black Mold and they said NO. Plaintiff is not an expert in this field, however, it is BLACK and it does NOT BELONG THERE;
- Plaintiff has asked Doctors, Public Health Nurses, and custody staff then and recently if they would shower in the CTC G1 Shower and all of them said NO except one Nurse.
- Plaintiff asked several times for medical staff to call in an expert to evaluate the shower room completely they said no.
- The ceiling panels above the shower have both black mold and some other seashell like fungus growing there, LOOK Up AT THE CEILING;
- Plaintiff as well as Doctors named below have stated that G1 is the most unsanitary shower and unit they have ever seen, this is suposed to be a Hospital? Plaintiff made a conscious decision to not shower in the G1 Shower room  especially sense Custody and Medical Staff would not have it evaluated and fixed. Plaintiff believes, and is informed by medical personnel,  that the shower room cannot be fixed.


11) Plaintiff made a conscious decision based on information and and belief to not shower in the UNSANITARY CONDITIONS found and personally witnessed. Plaintiff complained to numerious  medical staff to include Doctors, RN's (One of which who is the Public Health Nurse in the present (LAL) and LVN's all of whom consciously know, and have been personally informed that neither LVAD Patient will shower in the G-1-CTC Hospital Shower.  Prison Officials if they care to deny it, cannot produce one record that shows either LVAD Patient (Temple or Barboza) have showered in the G1 Shower, they are required to keep such information and records, they cannot explain why Temple or Barboza have never showered, except to tell the truth.

12) Plaintiff's  complaints were met with constant denials to fix

(3)

1    the UNSANITARY Conditions and would result in comments to the effect: " Well

2    then don't shower" "Bird bath in your cell" [Imagine bird bathing in YOUR

3    sink at home for two years..and not using your shower because it was to

4    dirty, nasty, and clearly unsanitary]...Prison officials refused to act period.

5         13) Plaintiff believes the comments: " Well then dont shower"

6    "Bird-Bath in your cell" are discrimitory under The American Disabilities

7    Act (ADA) not to mention dehumanizing and demeaning.  The only reason that

8    Plaintiff cannot shower is the California Medical Facilities failure and

9    inability to provide a SANITARY Shower.  Come stand in it..

10        14) Plaintiff based on his training by CDCR as both a Trained Peer

11   Educator, Building Porter, and shower cleaner at various institutions

12   believes there is no way to clean or sanitize the G-1 Shower, it would have

13   to be completely rebuilt because of the contagious and infectious material

14   that has now been trapped under the tiles after re-caulking (That is now

15   coming up once again) and the Weird Steel Sheeting (Cover-up Sheeting) has

16   Black Mold all over it AND ESPECIALLY Behind it, the same is true of the RAW

17   SEWAGE that has been leaking behind the wall panel's from both the 5 inch and

18   3 inch sewage pipes on the ceiling.  Plaintiff has no reasonable expectation

19   that anyone has to believe his depictation of the Unsanitary Conditions...

20   take an honest look YOURSELF (Don't be cowards, come see for yourself's)

21   NOT One of YOU can stand in the middle of the G1 Shower...and tell anyone

22   that YOU would shower in it  (Moral and ethical standard);

23        15) Plaintiff on or before December 17, 2020 , was INFECTED with

24   CORYNEBACTERIUM STRIATUM in the G1-Hospital Please STOP and read the attached

25   information sheet on this type of infection with particulare  emphasis on the

26   underlined facts;

27        16) Plaintiff was BLEEDING from BOTH Nostrils, his left ear, and

                                    (4)

1  and penis, and had to be transported to U.C. Davis via Ambulance " Code 3 "

2  (Emergency);    Plaintiff was leaking green **& yellow puss** from his "Driveline"

3        17)  Plaintiff was seen over a week period by a substantial number of

4  the U.C. Davis Contagious & Infectous Disease Team consisting of several

5  Doctors and support staff who asked a lot of detailed questions (if not angery

6  ones.)  Plaintiff was placed on serious IV Antibiotics that could not be admin-

7  istered at CMF.  The Contagious & Infectous Disease Team insisted that

8  plaintiff  remain at U.C. Davis for 8 weeks;

9        18)  The cost at U.C.D is **$11,000.00** a day in E-6 Cardiac Unit times

10  8 Weeks is **$616,000.00** all because CMF is totally remiss in being clean;

11        18) The California Medical Facility told plaintiff that the infection

12  was a "**MILD EAST COAST FUNGUS**" and down played the REAL Facts (i.e.,

13  Transmitted person-to-person in a hospital setting; NOT a common disease; it can

14  become a disseminate infection known as bacteraemia; and has KILLED 6 **patients**

15  out of **21** in a well-documented out break in Spain.  Which begs the question

16  how many patients have been killed at CMF behind this same disease?  The U.C

17  Davis Contagious & Infectous Disease Unit would consciously know of any other

18  deadly infection of CORYNEBACTERIUM STRIATUM within their perview and would

19  deciminate that information to a recipiant patient; it KILLS Patients;

20        19) "Prevention of initial infection, particularly in a hospital

21  setting is a key element of treatment, Sterilizing all surfaces [    ] ... is

22  an integral element of STOPPING DISEASE ESTABLISHMENT"  CMF is a disease

23  factory waiting to be honestly discovered by a decerning mind...[Moral and

24  eithical mind]; [Hard to find];

25        20) Plaintiff has seen SO MANY CMF Patients infected and placed

26  on IV Antibiotics over the last 2 years period [up to 50% infected]of just

27  G1 F.N.#1/    These infections are NOT just limmited to G1 See whole of CMF;

F.N.#1/ Inmates to name a few: Mason, Empinada, Fleming, kilborne, Martinez,
Shannon, David Snyder, the list goes on and on, there have been 6 or 7 deaths
since I arrived in G1.

(5)

21)  Plaintiff based on information and belief believes that The Salono County Coroners Office can provide the People of The State of California with the number of infectous deaths, and the infection status of CMF Patients who died of other causes, over the last two years; The Salono County Recorders Office can provide the rest voluntarily or by subpoena in Troy Alexander Temple v. Dr. Michael Gibson U.C. Davis Cardiologist in Salano County Superior Court / United States District Court For The Eastern District of California (Pendant Jurisdiction)  Plaintiff seeks all infectous Death Records from 2009 to the present to cover the first LVAD Death of inmate Patient (Lauranzano) plaintiff is informed and believes these infectous deaths are primarily caused the California Medical Facilities poorly maintain-ed, run down, and unsanitary condition...["Abhorrant" was used by a Depart-mental Public Health Official on June 13, 2022 while standing in the G1 Shower Room];

22) Plaintiff based on information and belief believes that it would take millions of dollars to clean-up (Not cover up) the unsanitary conditions found all over CMF. Government officials at all levels of govern-ment realize it would take not only take millions to bring CMF up to moral and eithical standards, but that in doing so it would cause exstreme hard-ship on daily operations.  Plaintiff's training by CDCR and The Healthcare Division warned him that officials at ALL Levels will resist the truth, choosing instead to defend dirt, filth & the unsanitary...and that this is actually 'NORMAL' this is not only resistance it is stand alone death that is unnessary...and avoidable in the first intance;

23) Plaintiff is informed that U.C. Davis is ready to implant yet another LVAD Patient even consciously knowing that CMF has infected 3 out of 3 LVAD Recipiants, killing one, and almost killing all three with their

JURT PAPER
*E OF CALIFORNIA
J-113 (REV 3-85)
29111

1  unsanitary conditions, The LVAD Team has been repeatedly informed that neither

2  current LVAD Patient will shower in the G1 Shower because it is so dirty, they

3  will still send the new LVAD Patient here to CMF with expensive shower gear

4  to take a shower he NEVER will use (he could die of a serious infection);

5        24 What is the bottomline? CMF Officials working with other

6  government agencies will attempt to cover up the most UNSANITARY (Deadly)

7  institution in the state (A Hospital?) at all levels; and they do not care

8  one way or the other if it kills inmate patients with prevailant infections

9  and diseases.  The best Primafacie-Evidence in this case is YOUR PRESENCE IN

10 THE MIDDLE of the G1 Shower Room;

11     The people of the State Of California have an invested interest in DEATHS

12 occurring in the state prison system, and how prisoner's are treated-they have

13 a fundamental right to insure their family members are disease free and that

14 the prison is providing due dilligence in NOT placing their lives in danger.

15        25) Plaintiff swears under penalty of purjery of the laws of the

16 State Of California That The above is true and correct to the best of his

17 knowledge, executed this ____day of June 2022.

18                                    Respectfully Submitted

19                                    Troy Alexander Temple

20                                    Troy Alexander Temple

21

22

23

24

25

26

27



(7)

resistance to the antibiotic penicillin.[2] Researchers deduced that due to the long-term exposure of *Corynebacterium striatum* to Penicillin resistance had been acquired by most isolates. In the same experiment, multi drug resistance was observed in 49.2% of strains.[2]

*Corynebacterium striatum* has been found to carry the *bla* gene.[2] This gene encodes a class A β-lactamase. β-lactamase are a group of antimicrobial enzymes that work to counter the effect of β-lactam antibiotics such as ampicillin and penicillin.

Further genes associated with antibiotic resistance include, but are not limited to: the gyrA gene which is attributed to resistance to the major antibiotic group fluoroquinolones, the *aph(3')-Ic* gene imparting resistant to kanamycin, *aph(3″)-Ib* and *aph(6)-Id* causing resistant to streptomycin. Researchers also found that the *erm(X)* gene causes resistant to erythromycin[17][20][21]

# Disease[edit]

Infection with *Corynebacterium striatum* was initially thought to occur through self-infection, transmitting the bacteria from a site where it persists as commensal and then allowing it to colonise in a situation as a pathogen.[2][22] It is now understood that it can be transmitted person to person, particularly in a hospital setting.[2][22]

While *Corynebacterium* infections are not common, when they have been observed it is in individuals with prosthetic devices or those who are immunosuppressed.[6] When detected under these conditions it is considered a true pathogen. Non-diphtheria Corynebacterium types are also being recognised for their impact on those suffering from long term respiratory disease.[23]

## Infection[edit]

Many cases of infection with *Corynebacterium striatum* have been documented with particular relevance to acquisition of infection in hospitals – otherwise known as a nosocomial infection.[22][3] *Corynebacterium striatum* has been known to colonise prosthetics, particularly heart valves, prosthetic joints and even intravenous apparatus such as catheters.[7] Infections of this type have been described as a local infection or they can progress into a larger disseminated infection otherwise known as bacteraemia. Other documented infections include osteomyelitis, an infection of the bone that can occur through blood born infection or injury to the bone itself.[4][24]

One of the first described infections of an individual with Corynebacterium striatum occurred in 1980.[25] The man was severely immunocompromised, suffering already from leukemia.[25] After this, a number of isolated cases were documented. A well documented outbreak, at the Hospital Joan March, Mallorca, Spain, saw 21 individuals infected with *Corynebacterium striatum*.[22] The individuals all suffered from chronic obstructive pulmonary disease (COPD), and had also had significant tobacco exposure through their life, and as such were consistently being admitted to the hospital where they were treated by care staff with shared equipment.[22] In this instance *Corynebacterium striatum* was causing infection in the respiratory tract of patients and detected in sputum samples.[22] Of the 21 cases in the outbreak, there were six associated deaths.[22]

Another study of infection with *Corynebacterium striatum* described a patient who was admitted to hospital for treatment of cardiac arrest in 2008.[3] During her stay the patient was fitted with a central venous catheter through which she contracted bacteraemia of *Corynebacterium striatum* which resulted in her death.[3] The patient's age and immuno-compromised state resulting from pre-existing kidney failure ultimately allowed for the establishment and dissemination of infection.[3]

There is little to no evidence for Corynebacterium Striatum infection or colonising animal specimens.

## Treatment[edit]

Next Pg. →

Multidrug resistance is the main factor considered when treating disease caused by *Corynebacterium striatum*.[19][6] Treatment with a mix of broad-spectrum antibiotics may thus be necessary. The selection of further antibiotic resistance is a serious consideration that must be made when selecting patient treatment. A study into the occurrence of non-diphtheroid infections determined that of all bacterium tested, *Corynebacterium Striatum* had the highest occurrence, accounting for 47% of infections.[26] In the same study, it was determined that all non-diphtheroid corynebacterium were susceptible to treatment with vancomycin, quinupristin-dalfopristin, linezolid and gentamicin.[26] While multiple studies confirmed that vancomycin was highly effective on all isolated species.[10][27] Previously it was known that *Coronybacterium* were susceptible to β-lactams, tetracycline, and fluoroquinolones, but recently, resistance genes to such treatments have been observed in clinical isolates.[27] Similar resistance was noted in a study with all isolates showing resistance to ciprofloxacin.[10] Of significant clinical significance is a rising resistance to beta-lactams in the last two decades, a group of antibiotics that includes penicillin.[28] Suggested oral treatments include a class of oxazolidinones - linezolid.[27] Although treatment with linezolid is not often prescribed as sustained treatment can affect liver function and have negative side effects including headaches and nausea.[29] Although differing results of susceptibility to antibiotic treatment has been noted between experiments, as such specific susceptibility of isolates should be obtained through antibiotic sensitivity testing. In clinical situations the antibiotic sensitivity can be obtained through disk diffusion assays of E-strip test. Treatment of clinical cases, such as the outbreak at the Hospital Joan March, were treated case by case, based on the antibiogram obtained from each patient's sputum sample.[22]

More broadly, prevention of initial infection, particularly in a hospital setting, is a key element of treatment. Sterilising all surfaces, and prostheses, as well as constant replacement and maintenance of prosthesis, is an integral element of stopping disease establishment.[30]

**Case Name:** _Temple vs Gibson et al_

**Case Number:** _2:23-cv-00478-EFB_

**Court:** _Eastern Dist._

# PROOF OF SERVICE BY MAIL

I, _Troy A. Temple_ declare:

That I am over the age of eighteen years of age and am ~~not~~ a party to the above entitled cause of action. That I reside in Solano County, California at the California Medical Facility, at 1600 California Drive, P.O. Box 2500, Vacaville, California, 95696-2500.

That on _June 20, 2023_ I served the attached: a true copy of the attached:

_Signed Complaint as ordered by Court_
_See enclosed order_

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal legal mail collection system at the California Medical Facility, Vacaville, California, addressed as follows:

_Court Clerk_
_U.S. District Court_
_501 I Street #3-200_
_Sacramento, Ca. 95814-_

I declare under penalty of perjury and under the laws of the State of California that the foregoing is true and correct. That this proof of service was executed on _June 20, 2023_ at the California Medical Facility, Vacaville, California.

_Troy A. Temple_
**Declarant**

_[signature]_
**Declarant's Signature**